In the United States Court
for the District of New Jersey

CARY LEE PETERSON
[Plaintiff],

RECEIVED
OCT 04 2018
AT 8:30 M
WILLIAM T. WALSH CLERK

18-14649 BRM
LHG

v.

GARVEY SCHUBERT BARER;
JOHN DOE

PLAINTIFF CARY LEE PETERSON'S, VERIFIED COMPLAINT FOR AN EXPARTE, EMERGENCY INJUNCTIVE RELIEF ORDER

Plaintiff, Cary Lee Peterson (hereinafter referred to as "Plaintiff"), for its Complaint against Defendant, Garvey Schubert Barer (hereinafter referred to as "Defendant" or "Co-Defendant 1") and "John Doe" (hereinafter referred to as "Co-Defendant 2" or "Doe") (both co-defendants hereinafter referred to as "Garvey" collectively) alleges as follows:

[Page numbers are in bottom left corner]

↓

NATURE OF THE ACTION

1. This is an adversary proceeding seeking an ex-parte and emergency injuctive relief including a temporary restraining order against Defendant, Garvey Schubert Barer, a law firm based in Washington, District of Columbia on 1000 Potomac Street (known to have branch offices throughout the United States) and John Doe, an unidentifed party who was/is alleged in participation and concert with the Defendant per Klein's remarks in "Exhibit A", "...as I understand it [is] one of his associates at Garvey Shubert [that] filed the Federal charges against Cary [Peterson]...", derived from an email chain forwarded to the Plaintiff's criminal defense attorney, Eric Marcy by the Plaintiff on or about April 12, 2017, which was initially sent as an "Original Message" by "Tom Klein" (under subject matter regarding "... Klein, Herbert, [and] KDP [Partners] v. Christopher Day [and Gregg Jaclin]"), (a civil complaint filed at the Superior Court of Sandusky, Ohio in November 2016 against Day and Jaclin for corporate and bank wire fraud, and breach of contract claims related to the "Stock Purchase Agreement" and "Escrow Agreement" for the purported reverse-merger between RV Plus, Inc.,

and DBS Distributors, Inc. [both, RVPlus and DBS are Delaware corporations] that executed on or about April 24, 2012 following a payment of $300,000 sent to RVPlus' attorney, Gregg Jaclin per terms and conditions of the "Escrow Agreement" [Exhibit D], which is pursuant to the [RVPlus] "Stock Purchase Agreement" [Exhibit E], an agreement between RVPlus' CEO, Christopher Day and the Plaintiff, who was an appointed representative for KDP Partners in 2012), sent to Plaintiff (by Klein) on April 12, 2017.

2. Further, the Stock Purchase Agreement [Exhibit D] and Escrow Agreement [Exhibit E] are also court exhibits in the following cases:

(A) United States v. Cary Lee Peterson (16-CR-00230-001 AET);

(B) SEC v. RVPlus, Inc.; Cary Lee Peterson (May 2016);

(C) Cary Lee Peterson v. RVPlus, Inc; Christopher Day; American Registrar [and] Transfer Company ["ARTCO"] (3rd Cir., Del. U.S. 18-CV-704)

3. Further, Plaintiff seeks emergency injunctive relief pursuant to Securian Financial Services, Inc. v. Treder (6th Cir., June 13, 2016) under Fed R Civ P. 65 ("Rule 65").

4. Further, the case law aforesaid resulted in the Plaintiff, Securian being granted an emergency TRO against the Defendant due to evidence "that the immediate and irreparable injury, loss, or damage will result to Plaintiff before Defendants can be heard in opposition on this issue".

5. Furthermore, Plaintiff alleges that Defendant, Garvey has conducted tort and conspiracy against Plaintiff via tortious interference, internet/webite hacking, cyber-bullying, cyber-harassment, gross negligence, abuse of process, and malicious prosecution, which resulted in "Federal charges (as stated twice by "Klein" in Exhibit A), that more recently resulted in a criminal conviction in May 2018 (in United States v. Peterson), and civil litigation in U.S. Court, District of New Jersey, SEC v. Cary Lee Peterson; RVPlus, Inc., in addition to civil investigations against Plaintiff by Federal Election Commission ["MUR 6997"] and the Office of the U.S. Attorney for District of Columbia ["USAO-DC".

6. Further, Peterson v. RVPlus (18-CV-704, Section 119, Lines 784-818) disclose evidence of hearsay which induced Garvey's cause of action to use its political and governmental ties to willfully aid and abet a private investigator, federal law enforcement, and the U.S. Justice Department to "file federal charges" against the Plaintiff around or about March 2016, in addition to unethical and negligent communication between Defendant's law firm personnel and clients, a private investigator in California, and the Government regarding the Plaintiff's "FB page" [Facebook], a new political organization the Plaintiff worked for (upon being released on bail from detainment for criminal charges in U.S. v. Peterson), and the Plaintiff's mother [i.e., "I have attached some info on her" — Frayne], stated in Exhibit A.

7. Hence, the remarks aforesaid about Plaintiff's mother, in addition to the context of Exhibit A are construed as stalking under state and federal laws on stalking and harassment, including N.J. Statute, c. 2C:12-10 and 47 U.S.C. 230(b), "stalking, and harassment by means of computer;" also see United States v. Saunders (2003, CAAF) 59 MJ 1, 2003 CAAF, 59 MJ 122.

BACKGROUND FACTS ON EXHIBIT A

8. Exhibit A of this Civil Complaint is titled "Exhibit Q" in Peterson v. RVPlus (3rd Cir., Del. U.S., 18-cv-704). Thus, Plaintiff, Peterson waives any attorney-client privilege regarding Exhibit A (also known as "Exhibit Q" in Peterson v. RVPlus).

9. Exhibit A was sent to Plaintiff by Klein on April 12, 2017 following a phone call.

10. Jaclin was served with civil complaint and subpoena for Wells Fargo IOLTA trust account statements on Friday, November 25, 2016 (see Klein; Herbert; KDP v. Day; Jaclin - Ohio Superior Court F1D2090561, Sandusky 2016)

11. Per the Ohio Court Subpoena for Jaclin's Wells Fargo account records, KDP (Herbert and Klein) confirm that Plaintiff, Peterson did not receive any portion of ["Mike's"] $300,000 [loan funds] payment for RVPlus Stock Purchase Agreement, as private investigator, "Frayne" alleges in Exhibit A (page 6).

12. Hence, pursuant to "Exhibit J" of this Verified Civil Complaint, the SEC had confirmation of the "money trail" and whereabouts of

"Mike's" [meaning Michael Herbert] $300,000 bank wire to Jaelin's Wells Fargo account in August 2014, over two years before KDP v. Jaelin civil complaint in Ohio, and almost two years before the "news article" about Plaintiff's political organization that supported [then] 2016 Presidential Candidate, Bernie Sanders. Thus, "Exhibit J" is also an exhibit in SEC v. RVPlus; Peterson, United States v. Peterson, and Peterson v. RVPlus; Day; ARTCO.

13. Plaintiff interviewed with a news publication in Burlington, Vermont regarding Plaintiff's political groups and FEC Committee supporting the Defendant's client, Sanders for 2016 presidential run.

14. Defendant's client, Sanders acknowledged Plaintiff's political support by publishing URL links to related news articles on the "Senator Bernie Sanders" webpage hosted at "senate.gov".

15. Defendant's client, Sanders had communication via email and phone (through Sanders' Administrative Staff) with Plaintiff between February 2015 and May 2015.

16. In May 2015, Plaintiff was advised by Defendant's client, Bernie Sanders 2016, Inc. that Plaintiff's political action committee must change its name pursuant to FEC regulations, since Sanders announced his official run for presidential candidacy on April 30, 2015. Thus, Plaintiff changed the pro-Sanders PAC name from "Ready for Bernie Sanders 2016" to "Americans Socially United".

17. Furthermore, Defendant's client, Bernie Sanders 2016 stated that they could not be in normal communication or association, as prior to April 30, 2015, as it was an FEC violation for a candidate to be directly involved with an "unauthorized" PAC that the candidate does not own or operate. Additionally, Defendant's client, Sanders 2016 openly disclosed its dislike for "Super PACs" and already had been working with ActBlue, another super PAC that was registered with FEC, who raised funds for Bernie Sanders 2016.

18. In June 2015, Defendant sent Plaintiff's political organization a cease and desist letter regarding alleged intellectual properties violations posted and published

on social media sites and political websites affiliated or owned by Plaintiffs organization, Americans Socially United.

19. Defendant spoke with Plaintiff in June 2015 regarding the aforesaid legal notice and the Plaintiff's political organization for Sanders cured the disputed matter and published an update on Facebook, in addition to an email to Defendant and affiliated media representatives that the disputes issues from the "Bernie 2016 Cease and Desist Letter" to ASU had been cured.

20. In July 2015, Plaintiff contacts Defendant to alert them that [celebrity] "Craig" would be contacting him as a reference for Plaintiff's pro-Sanders PAC in efforts to verify that Defendant's client, Sanders 2016 had no objections to him making a contribution for $47300 to Plaintiff's PAC due to the fact that federal candidate's [personal] campaign committees could only accept a maximum of $2700 from a single donor under FEC regulations. Thus, Defendant's owner of Garvey, Deutsch sent an email reply stating no objections to

Craig's political contribution to Plaintiffs PAC, in addition to stating that he could not be involved with "PAC" affairs and wish Plaintiff 'good luck on his endeavors [with pro-Sanders PAC].

21. Plaintiff, or Plaintiffs organizations, or lobby firm was at no time in any civil or criminal litigation at anytime for "federal charges" (or any legal action of any kind) related to pro-Sanders PAC.

Hence, the AUSA of Newark, New Jersey disclosed to Plaintiffs attorney in 2017 that he was pursuing criminal prosecution against the Plaintiff for pro-Sanders PAC.

Additionally, the Government disclosed Plaintiff's involvement with pro-Sanders' PAC before five U.S. court magistrate judges hearing proceedings for USA v. Peterson, and one district court judge in U.S. Court District of New Jersey, who heard jury trial. In addition, it is alleged that the grand jury minutes from USA v. Peterson criminal case disclose details about Plaintiffs work as a political and public figure and the Plaintiffs

involvement with Pro-Sanders PAC, and the media controversy on uncharged claims against the Plaintiff and Plaintiffs Pro-Sanders PAC. Hence, the grand jury proceedings took place around or about May 2016 when the Plaintiff, Cary Lee Peterson was ~~Indictmen~~ indicted under three counts of white-collar (and securities) fraud, unrelated to the FEC, media controversy, pro-Sanders PAC, 2016 Elections, or politics (in general).

22. Hence, Plaintiff was arrested at SFO Airport upon return from Australia on March 12, 2016 for "federal charges" filed by an unknown party, or individual at the Justice Department. Thus, Plaintiff submitted a request to the court and US Attorney, in addition to FOIA-FBI before jury trial for USA v. Peterson and no evidence, report, or material was produced or proffered under Federal Acts (Brady, Giglio, Jencks, and FOIA), which leaves the identity of "his associates" who filed "Federal charges" against Cary" [Peterson] unknown to the Plaintiff, the Justice Department, and the courts hearing the Plaintiffs criminal and civil proceedings in New Jersey.

# ABUSE OF PROCESS CLAIMS

23. Campbell v. City of Bakersfield, 2007 (E.D. Cal, Jan. 30 2007 ["Exhibit K"]

24. Read v. Profeta (D.N.J., Apr. 15, 2016) ["Exhibit L"]

25. Internet Billions Domain v. Venetian (C.A. No 01-5417, 2002) ["Exhibit M"]

26. Shaw v. Moore ["Exhibit N"]

27. Thus, case law set forth above (items 23, 24, 25, and 26) are pursuant to the Plaintiff's allegations against the Defendant, Garvey in this verified civil complaint

28. Defendant knew that Plaintiff was not at fault of any gross negligence, wrongful intent, or fraudulent conduct against its client, BAS, or its owners, Herbert and Klein upon the issuance of results from SEC Administrative Proceeding against Christopher Day (and his family's stock transfer agency ARTCO) by the SEC in May 2016, around or about the same time Jaclin was charged by the SEC, as the

private investigator, "Frayne" mention in Exhibit A (page 6); [Also see "Exhibit O"]

29. Background facts on "Klein; Herbert; KDP v. Day; Jaclin" civil suit are as follows:

[End of Page]

The civil complaint, "Klein; Herbert; KDP Partners v. Christopher Day; Gregg Jaclin" filed at Ohio Superior Court in Sandusky, Ohio (which is the subject matter and context of "Exhibit A") disclose no evidence, no claims, and no direct or indirect allegations against the Plaintiff, Cary Lee Peterson or Plaintiff's mother who is mentioned as ~~an~~ a target of an unrelated investigation conducted by Defendant, Garvey, and their associates in participation and concert with an investigation that is not related to civil complaint filed at Ohio Superior Court by Garvey's client(s) based in Ohio, as discussed in Exhibit A.

Further, Plaintiff alleges tortious interference, gross negligence, and abuse of process (a political tort derived from a controversial news article mentioning Plaintiff, Plaintiff's political organization (Americans Socially United), a celebrity who made a donation to Plaintiff's political organization, and the Defendant, Garvey's client, [Senator] Bernie Sanders, who was a Democratic Presidential Candidate of the 2016 Election, who Plaintiff's political organization had been supporting since a grassroots political social media group co-founded by Plaintiff (est. 2014) voted [then-Independent Party] U.S. Senator Bernie Sanders of Vermont as

the presidential candidate nominee for the grassroots political group, which induced the formation of Ready for Bernie Sanders 2016 ("Sanders PAC"), a political action committee registered with Federal Election Commission in February 2015 (three months before Sen. Bernie Sanders announced his official candidacy for presidency under the Democratic Party).

The aforementioned "news article" about Plaintiff's political organization, Defendant's client, "Sanders", and a popular celebrity who made a donation to Plaintiff's organization who supported "Sanders" was published by Center for Public Integrity around or about September 10, 2015. Hence, the Defendant, its owner, "Deutsch", and another attorney who worked for Garvey share the URL link to the controversial news article containing libelous and defaming content about Plaintiff, making uncharged allegations that the Plaintiff's political organization "duped James Bond" [referring to Hollywood actor, Daniel Craig who plays the character "James Bond" in the James Bond movie series], as shown in "Exhibit B". In addition, Garvey's attorney, "Krasnow" forwards the news article about Plaintiff's political organization to his client, "Klein", who is also a [mutual]

business associate of Plaintiff. Thus, Klein is a co-owner and CEO at a radio broadcasting company in Ohio that is represented by the Defendant, Garvey, as Klein states in Exhibit A, "...Garvey Shubert's Erwin Krasnow is our FCC attorney..." [Krasnow also works for Federal Communication Commission who regulates radio stations, as Klein's company, "BAS"] Further, Klein was co-owner of KDP Partners, the holding company established for the investment opportunity for RVPlus merger and acquisition (est. 2012), who appointed the Plaintiff as the managing member and "Investor Representative" [for Plaintiff's lender "Herbert", who is a co-owner of BAS]. Furthermore, Herbert loans the Plaintiff, Peterson $300,000 for KDP to complete [RVPlus] Stock Purchase Agreement and Escrow Agreement around or about April 24, 2012. [See Exhibits C and D]

Hence, Herbert's bank in Freemont, Ohio sent a bank wire transfer for $300,000 to an IOLTA, attorney trust account at Wells Fargo Bank held by a law firm, Anslow and Jaclin LLP, and two partners, Gregg Jaclin and Richard Anslow. [See Exhibit E]

Hence, the Stock Purchase Agreement and Escrow Agreement between KDP Partners, RV Plus, and Anslow and Jaclin LLP was breached shortly after Herbert's [loan] funds were sent to Jaclin on behalf of Plaintiff, Peterson, who personally guaranteed repayment of the KDP loan to Herbert under written agreement. Additionally, Jaclin issued public disclosures of a purported "reverse-merger", "license agreement", and "change in control and management" of RVPlus, Inc. (who was under management and control by [CEO, CFO, Corporate Officer, and Director] Christopher Day) on the EDGAR System for the Securities and Exchange Commission ("SEC") via a licensed EDGAR filing agent located in Monmouth County, New Jersey. In 2013, the Plaintiff reports various RVPlus related disputes and complaints to the SEC, FINRA, and files a civil complaint against a RVPlus shareholder, who was friends with Plaintiff's mother for unrelated domestic matters. [see Peterson v. Valento, Scottsdale City Court, AZ - 2013]. In July 2013, the SEC suspended trading of RVPlus for civil disputes and the Plaintiff, Peterson began communication with the SEC in efforts to prevent exposure to legal and financial liabilities, and civil and criminal action against his company, "ECCO2 Corp", "DBS Distributors",

or himself due to his failed reverse-merger transaction with RVPlus. Additionally, Plaintiff, Peterson was seeking general assistance from the SEC as recourse to recover the $300,000 loan funds sent to Jaclin for contracts that were breached due to material non-compliance, gross negligence, egregious error, legal malpractice, and fraud. Hence, the $300,000 loan went into default, civil action was taken by KDP and Herbert in 2016, and the private investigator alleged that Plaintiff was a co-conspirator with Gregg Jaclin and Christopher Day for the purported RVPlus Agreements related to a reverse-merger transaction with DBS Distributors, a green technology company owned and operated by Plaintiff (est. 2008). [See Exhibit E]

[End of Page]

In close, factors weigh in Plaintiff's favor particularly the fact that the Plaintiff faces irreparable harm without injuctive relief while the Defendant will not be exposed to any substantial harm if a temperary restaining order is granted.

Further, the Plaintiff has evidenced through exhibits of this verified complaint that the immediate and irreparable injury, loss, or damage will result to Plaintiff before Defendants can be heard in opposition on this issue, as Plaintiff, Peterson is scheduled to appear at U.S. District Court of New Jersey on October 3, 2018 for sentencing related to "Federal charges" filed by Defendant, Garvey, or a third-party in participation and concert with the Defendant, who remains unknown to the Plaintiff or the Court hearing proceedings for Plaintiffs criminal case that the Plaintiff alleges were induced by conspiracy, tort by abuse of process, tortious interference, gross negligence, and malicious prosecution conduct by the Defendant, Garvey.

Failure to issue a TRO would result in irreparable harm to Plaintiff, such an injuction would

not cause substantial harm to others. Additionally, an order for injuctive relief against the Defendants would not substantially harm the Defendant, Garvey's employees, or corperate officers.

Additionally, Plaintiff alleges in this verified civil complaint that its reputation in the industry has suffered and will be damaged more if the Defendant (or an "associate" of the Defendan willful interferes, influences, or abets Parties (or representative of Parties) or the Court, or the government; who is involved in related civil investigations against (or involving) the Plaintiff regarding any political works conducted between 2014 through 2018. Hence, allegations made within this verified complaint could result in irreversible loss, damage, and irreparable harm pursuant to "Rule 65".

[End of Page]

Lastly,

Plaintiff discloses that:

A. Around or about september 10, 2015 when Defendant, Garvey forwarded email of "news article" to Klein, who forwards [Exhibit B] email link to Plaintiff, Peterson, the Plaintiff was visiting Newark, New Jersey for business

B. As of October 1, 2018, the Plaintiff has prepared and submitted this [hand-written] verified civil complaint from the Monmouth County Corrections Facility in Freehold, New Jersey, on federal hold, awaiting court proceedings for USA v. Peterson.

Thus, shall the Plaintiff's disclosures set forth above set the proper jurisdiction and venue within the District of New Jersey.

Per the affidavit given to this court, I, Cary Lee Peterson state that I am unable to prepay the full fees and costs starting this lawsuit and ask the court to allow me to proceed under the in forma pauperis statute, 28 U.S.C. 1915.

State of New Jersey

The undersigned, as the Plaintiff [Pro Se], and states the following to be true under the penalties of perjury: The Plaintiff has read and knows the contents of the foregoing Verified Complaint for Exparte, Emergency Injuctive Relief; that the same is true to the knowledge of the affirmant except as to the matter therein stated to be alleged on information and belief and that as to those matters he believes it to be true.

X [signature] October 1, 2018
Cary Lee Petersen Date
[Pro Se]

Mailing Address A: Cary Petersen
1#43903 - MCCI
1 Waterworks Rd
Freehold, NJ
07728

Mailing Address B:
Aden Shoda
Power-of-Attorney
c/o Cary Petersen
100 Campus Twn Cir
Ste #103, Box 2038
Ewing, NJ 08638

NOTE: Please excuse grammatical errors and penmanship on this handwritten legal brief draft from detention center.